EXHIBIT 1

TO

VERIFIED COMPLAINT *IN REM*

DECLARATION OF KEVIN H. BURRELL

# DECLARATION OF KEVIN H. BURRELL
# IN SUPPORT OF COMPLAINT

I, Kevin H. Burrell, provide the following information under the penalty of perjury, as provided by 28 U.S.C. § 1746, and declare that the following is true and correct to the best of my knowledge, information and belief.

**A.     Declarant's Background**

1.      I am a Special Agent with the Drug Enforcement Administration (DEA) and have been so employed since July 2012. I am currently assigned to the Nashville District Office, Task Force Group 1. During my tenure as a DEA Special Agent, I have been involved in numerous narcotics and drug-related investigations involving violations of international, federal, and state narcotics laws. I have written, executed, and/or assisted in the execution of various state and federal search warrants for narcotics and dangerous drugs, for records and documents related to trafficking in controlled substances, communication devices, and for proceeds derived from these illegal enterprises. I am also familiar with, and have testified regarding, the techniques employed by drug dealers to conceal their assets and the way they keep records of such assets. I have received extensive training in the means and methods used by narcotics traffickers and the financial aspects of the illegal narcotics business. The federal crimes I am assigned to investigate include, but are not limited to, violations of 21 U.S.C. §§ 841 and 846 and 18 U.S.C. §§ 1956 and 1957.

**B.     Items Sought for Forfeiture**

2.      Pursuant to 21 U.S.C. § 881(a)(6), the United States seeks the forfeiture of $344,226 United States currency ("Defendant Property") seized during a traffic stop at I-65, Mile Marker 94 in Nashville, Tennessee on November 28, 2023.

C.  **Basis of Information**

3. The information in this Declaration was obtained through my personal observations, intelligence and information provided by partners at the Department of Homeland Security Investigations (HSI), information and conversations with partners at the Rutherford County Sherriff's Office (RCSO), my training and experience, information gathered during interviews of and conversations with civilians and other law enforcement officers, and written reports and investigations conducted by other law enforcement officers. I have not included all information known to me concerning the Defendant Property and the facts surrounding the investigation discussed in Declaration. Rather, I have included facts relevant to a determination that the Defendant Property is subject to forfeiture.

D.  **Background Facts**

*WANG travels from Atlanta to meet MINTER*

4. On November 28, 2023, the Nashville District Office (DO) Task Force Group 1 and the RCSO received intelligence from the HSI Chattanooga that a drug courier, originating in Atlanta, Georgia, was transporting narcotics to Nashville, Tennessee. The intelligence provided that the courier would be driving a white cargo van traveling west from the Chattanooga area on the I-24 interstate highway.

5. Nashville DO and RCSO subsequently located and began surveillance on the courier's white cargo van bearing GA License Plate TFV0849 (White Van) in the Middle District of Tennessee traveling west on I-24 toward Nashville.

6. The White Van was observed stopping at a residence in Antioch, Tennessee, known to members of the Nashville DO as the residence of Joseph Edward Minter III (MINTER).

3

MINTER is a prior DEA Task Force Group 1 (TFG1) target, previously arrested in a drug conspiracy.

7. During the White Van's stop at the Antioch residence, investigators observed the courier, subsequently identified as Jie Wang (WANG), removing boxes from the White Van and dropping them at MINTER's Antioch residence.

8. During surveillance, investigators observed MINTER give WANG a light-colored pillowcase that appeared to be heavy. WANG could be seen putting the pillowcase in the White Van. WANG departed the meeting in the White Van.

9. Based upon my training and experience and intelligence provided by HSI, the meeting between WANG and MINTER was a classic drop transaction whereby a courier delivers narcotics in exchange for payment.

### *White Van Traffic Stop*

10. Following WANG's departure from the meeting with MINTER, Nashville DO Task Force members conducted a traffic stop of the White Van heading North on I-65, near Mile Marker 94 in Nashville, Tennessee.

11. Task Force Officer (TFO) Gregory made contact with the White Van's driver, WANG. There were no other occupants of the White Van. While speaking with WANG, TFO Gregory could smell an obvious and pronounced smell of raw marijuana. Based upon my training and experience, large amounts of raw marijuana produce a noticeable smell.

12. TFO Gregory asked WANG where he was traveling. WANG stated "Kentucky". TFO Gregory asked WANG to step to the rear of the van.

13. TFO Gregory asked Wang what he was transporting in the White Van. WANG stated he does not understand English. WANG was read his Miranda rights.

14. TFO Gregory conducted an exterior dog sniff of the White Van using his K-9 "Wiley". Wiley gave a positive alert to on the passenger side cargo door.

15. TFO Gregory advised WANG that officers were going to search the White Van.

16. During the search of the driver's side cab of the Van, investigators observed a large black duffle bag in between the drivers and passenger's seat of the Van.

17. TFO Gregory unzipped the black duffle bag and observed a light-colored pillowcase matching what agents observed to the pillowcase given to WANG by MINTER. The pillowcase contained a large, vacuumed sealed bag of U.S. Currency and a blue Tennessee State University cloth bag that contained a large amount of vacuumed sealed U.S. Currency. Based upon my training and experience, vacuum sealed currency indicates drug-related cash. Knowing that cash will carry the scent of narcotics, drug traffickers, their couriers and money mules often vacuum seal currency in an effort to avoid dog detection.

18. WANG stated he did not know what was in the black duffle bag. WANG stated that the U.S. Currency found in the black duffle bag was not his.

19. A search of the cargo area of the White Van revealed seven large cardboard boxes. These boxes contained a total of 156 pounds of marijuana. Based upon my training and experience, this amount of marijuana is consistent with largescale drug trafficking.

### *MINTER Traffick Stop*

20. Continued surveillance by TFO's at MINTER's residence revealed MINTER loading the boxes he had received from WANG into a Chevrolet Silverado truck and departing the residence.

21. A traffic stop was conducted of MINTER and a search warrant was executed at his residence, resulting in the seizure of an additional 119 pounds of marijuana. Based upon my training and experience, this amount of marijuana is consistent with largescale drug trafficking.

*Defendant Property is Counted*

22. I handled the collection of the U.S. Currency seized from the White Van incident to the encounter with WANG.

23. An official Loomis count concluded that the U.S. Currency totaled $344,226.00 U.S. Currency.

E. **Conclusion**

24. Based on the foregoing, my experience and training, and the facts of this investigation, I believe the facts support a reasonable belief that the Defendant Property is monies furnished or intended to be furnished by any person in exchange for a controlled substance or proceeds traceable to such an exchange, or monies used or intended to be used to facilitate any violation of 21 U.S.C. §§ 801, *et seq.*, including 21 U.S.C. § 841 (illegal drug trafficking) and 21 U.S.C. § 846 (attempted drug trafficking).

25. The Defendant Property is, therefore, forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6).

Special Agent, Kevin H. Burrell
Drug Enforcement Administration