UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| UNITED STATES OF AMERICA, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) No. 3:24-cv-00222 |
| $344,226.00 UNITED STATES CURRENCY, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

The Government has filed a Verified Complaint *In Rem* against $344,226.00 in U.S. Currency, and seeks forfeiture of those funds pursuant to 21 U.S.C. § 881(a)(6). (Doc. No. 1). Before the Court are the Government's Motion for Default Judgment and For Entry of Order of Forfeiture (Doc. No. 15) and Motion to Substitute Counsel (Doc. No. 5). For the following reasons, the Government's Motions (Doc. No. 5, 15) will be granted.

I. BACKGROUND

    A. Factual Allegations

On November 28, 2023, the Nashville District Office ("DO") Task Force Group 1 and the Rutherford County Sheriff's Office ("RCSO") received intelligence from the Department of Homeland Security Investigations ("HSI") Chattanooga that a drug courier, Jie Wang ("Wang"), was transporting narcotics through Nashville, Tennessee. (Doc. No. 1-1 ¶¶ 4, 7). Nashville DO and RCSO located and surveilled Wang's white cargo van, and later observed Wang remove boxes from the van and drop them at Joseph Edward Minter III's ("Minter") residence. (Id. ¶¶ 6–8). Minter then gave Wang a light-colored pillowcase that appeared heavy, which Wang put in the van. (Id. ¶ 8).

After Wang's departure from Minter's residence, Nashville DO Task Force members conducted a traffic stop of the white van. (Id. ¶ 10). Task Force Officer ("TFO") Gregory made contact with Wang, the white van's driver. (Id. ¶ 11). TFO Gregory smelled marijuana in the white van, and asked Wang what he was transporting. (Id. ¶¶ 12–13). Wang responded that he did not understand English, and was subsequently read his *Miranda* rights. (Id. ¶ 13).

TFO Gregory then conducted an exterior dog sniff of the white van using his K-9 "Wiley." (Id. ¶ 14). Wiley gave a positive alert to the passenger side cargo door. (Id.). TFO Gregory advised Wang that officers were going to search the white van. (Id. ¶ 15). During the search, investigators observed a large black duffle bag between the driver's and passenger's seat of the van (id. ¶ 16), containing the light-colored pillowcase that matched the item Minter provided Wang at Minter's residence. (Id. ¶ 17). The pillowcase contained a large, vacuumed sealed bag of U.S. Currency, and a blue Tennessee State University cloth bag contained the same. (Id.). The Government seized $344,226.00 ("Property") during the traffic stop, as well as 156 pounds of marijuana. (Id. ¶¶ 2, 19, 23).

Later, another traffic stop was conducted on a Chevrolet Silverado truck driven by Minter. (Id. ¶ 20). A search warrant was also conducted at Minter's residence. (Id. ¶ 21). The stop and search warrant resulted in 119 pounds of marijuana being seized. (Id.).

### B. Procedural Background

On February 28, 2024, the Government initiated a civil action *in rem* under 21 U.S.C. § 881(a)(6) by filing a Verified Complaint. It alleges the Property is subject to forfeiture because it is monies furnished or intended to be furnished by anyone in exchange for a controlled substance or listed chemical, or proceeds traceable to such an exchange, or any moneys used or intended to be used to facilitate any violation of 21 U.S.C. §§ 801 et seq., including 21 U.S.C. § 841 (drug trafficking) and 21 U.S.C. § 846 (attempted drug trafficking). Weeks later, from March 15, 2024

2

to April 13, 2024, the Government published a notice of the forfeiture for the public online. (Doc. Nos. 4-1, 4-2).

On November 26, 2024, the Clerk of Court entered default "as to [] Wang, [] Minter, and all other persons and entities, who may claim an interest in" the Property. (Doc. No. 6 at 3). The next month, on December 18, 2024, the United States Marshals Services served the Summons and Warrant for Arrest *In Rem* on the Property. (Doc. Nos. 3, 12).

**II.     LEGAL STANDARD**

The Clerk entered default under Federal Rule of Civil Procedure 55(a), and the Government now seeks a default judgment pursuant to Rule 55(b)(2). To be entitled to judgment, the Government must "publish[] notice of the action within a reasonable time after filing the complaint or at a time the court orders." Supp. R. G(4)(a)(i), Fed. R. Civ. P. For property located within the United States, publication should be made either "in a newspaper generally circulated in the district where the action is filed, where the property was seized, or where property that was not seized is located" or "on an official internet government forfeiture site for at least 30 consecutive days." Supp. R. G(4)(a)(iv)(A), (C), Fed. R. Civ. P. The Government is also required to provide direct notice of the complaint "to any person who reasonably appears to be a potential claimant on the facts known to the government." Supp. R. G(4)(b)(i), Fed. R. Civ. P. Absent good cause to the contrary, a potential claimant who received direct notice must file his claim before the deadline established in the notice provided. If a potential claimant did not receive direct notice but notice was published on a government forfeiture website, he must file his claim no later than sixty days after the first publication. Supp. R. G(5)(a)(ii), Fed. R. Civ. P.

The Government has complied with all of the foregoing notice requirements. Even still, before entering judgment in the Government's favor, this Court must review the allegations and supporting documentation to ensure they are sufficiently pled. United States v. $525,695.24,

Seized From JPMorgan Chase Bank Inv. Acct. #xxxxxxxx, 869 F.3d 429, 441 (6th Cir. 2017) ("Thus, before entering judgment in favor of the government, the district court had a duty to ensure that the allegations in the verified complaint were sufficient.") (citing Murray v. Lene, 595 F.3d 868, 871 (8th Cir. 2010) (noting that the district court should have "consider[ed] whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law")). In doing so, "[t]he government must establish that the defendant properties are subject to forfeiture by a preponderance of the evidence[.]" Id. (citing 18 U.S.C. § 983(c)(1)).

III.     ANALYSIS

The underlying criminal activity that the Government asserts the Property is connected to is "possession of a controlled substance with intent to distribute," which requires the Government to show that the defendant (1) knowingly (2) possessed a controlled substance (3) with the intent to distribute it. United States v. Phibbs, 999 F.3d 1063, 1063 (6th Cir. 1993) (citing 21 U.S.C. § 841(a)(1)). Because the Government seeks only the forfeiture of the proceeds of this crime, it must prove with circumstantial evidence that the Property has a substantial connection to drug trafficking to be entitled to judgment. United States v. Real Prop. 10338 Marcy Rd. Nw., Canal Winchester, Ohio, 938 F.3d 802, 810 (6th Cir. 2019) (in civil forfeiture cases, "the government may [] meet its burden with circumstantial evidence of the substantial connection between the subject property and illegal drug sales"); see United States v. $118,170.00 in U.S. Currency, 69 F. App'x 714, 717 (6th Cir. 2003) ("'[P]ossession of a large amount of cash is strong evidence that the money was furnished or intended to be furnished in return for drugs.'") (quoting United States v. Currency, U.S. $42,500.000, 283 F.3d 977, 981 (9th Cir. 2002)). Whether the Government has met this burden is based on "'the totality of the circumstances.'" Real Prop. 10338 Marcy Rd. Nw., 938 F.3d at 810 (quoting United States v. $99,990.00 in U.S. Currency, 69 F. App'x 757,

763 (6th Cir. 2003)). This analysis requires the Court to determine whether the Government's "culmination of . . . evidence" is strong enough to make its explanation of how the Property is connected to criminal activity more likely than not. United States v. $110,873.00 in U.S. Currency, 159 F. App'x 649, 652 (6th Cir. 2005).

In this case, the only evidence in the record for the Court to consider is the unrebutted Verified Complaint. See Am. Civil Liberties Union of Ky. v. Grayson Cty., 591 F.3d 837, 844 n.2 (6th Cir. 2010) ("A verified complaint carries the same weight as would an affidavit for the purposes of summary judgment.") (quotations omitted). Accordingly, the Court turns to evaluating the Verified Complaint to determine whether it shows, by a preponderance of the evidence, that the totality of the circumstances demonstrate the Government is entitled to judgment and an order of forfeiture on the Property. See $525,695.24, Seized From JPMorgan Chase Bank, 869 F.3d at 441.

The Court finds the Government has shown, based on the totality of the circumstances, that the Property is more likely than not connected to criminal activity. To start, the Court looks at the first of five sets of evidence the Government presents in its favor: the large amount of cash acquired. (Doc. No. 15-1 at 4). That Wang had $344,226.00—"an unusually large amount of currency to carry—supports forfeiture." $99,990.00 in U.S. Currency, 69 F. App'x at 762. "While the presence of a large amount of cash is insufficient, standing alone, to support forfeiture, 'carrying a large sum of cash is strong evidence of some relationship with illegal drugs.'" Id. (quoting United States v. $67,220.00 in U.S. Currency, 957 F.2d 280, 285 (6th Cir. 1992)). The "substantially larger amount of currency" than "[f]ifteen to twenty thousand dollars," which is "hardly enough cash, standing alone, to justify more than a suspicion of illegal activity" is

5

significant probative evidence that the Property is connected to illicit drug activity. Id. (finding the same for $99,990.00 in U.S. currency subject to forfeiture) (citations and quotations omitted).

Further, as the Government emphasizes, the packaging of the $344,226.00 is also strong evidence of drug-related activity. See United States v. $129,727.00 in U.S. Currency, 129 F.3d 486, 491 (9th Cir. 1997) ("[T]he nexus to drugs was provided by the distinctive manner in which the currency was wrapped in fabric softener sheets and plastic wrap. The narcotics detail recognized this wrapping as an indication of drug-related activity."). Here, the Verified Complaint states that $344,226.00 was vacuum-sealed and hidden inside a pillowcase stored in a duffle bag. (Doc. No. 1-1 ¶ 17). The "common sense reality of everyday life is that legitimate businesses do not transport large quantities of cash" in this manner. United States v. $242,484.00 in U.S. Currency, 389 F.3d 1149, 1161 (11th Cir. 2004); c.f. United States v. $10,700.00 in United States Currency, 258 F.3d 215, 232–33 (3d Cir.2001) ("As for the manner of packaging—rubber-banded in large bundles and concealed in baggage—the government has not presented evidence that this method of storage is unique to the drug trade.").

Evidence of a canine alert and Wang's and Minter's contemporaneous drug activity also support that the Property has a substantial nexus to illegal drug activity. Here, TFO Gregory's canine, Wiley, made a positive identification on the van that led to the recovery of marijuana and the Property. (Doc. No. 1-1 ¶ 14); see United States v. $215,300 in U.S. Currency, 882 F.2d 417, 419 (9th Cir. 1989) ("positive canine alert for the presence of narcotics on the seized currency" is strong evidence in favor of forfeiture); United States v. $67,220.00 in U.S. Currency, 957 F.2d 280, 285 (6th Cir. 1992) ("[A] positive dog reaction is at least strong evidence of a connection to drugs."). Further, considering that 156 pounds of marijuana was found inside the cargo area of the van Wang was driving, the cash was located in that same vehicle, and a subsequent stop of

Minter resulted in the seizer of 119 pounds of marijuana all help to carry the Government's burden. (Doc. No. 1-1 ¶¶ 16–19, 21); see United States v. $118,170.00 in U.S. Currency, 69 F. App'x 714, 717 (6th Cir. 2003) ("A claimant's record of drug activity is a highly probative factor in the forfeiture calculus.") (citation omitted); United States v. $10,700.00 in U.S. Currency, 258 F.3d 215, 224 n.8 (3rd Cir. 2001) (citing cases where "other courts of appeals have found that the government had probable cause to institute forfeiture proceedings against currency where the government presented reliable direct or circumstantial evidence of claimants' contemporaneous involvement in drug activities").

Taking into account the totality of the circumstances, the Government has demonstrated by a preponderance of the evidence that the $344,226.00 in U.S. Currency is substantially connected to drug activity and is therefore subject to forfeiture. See Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975) (judgment on well-supported allegations is "unassailable on the merits"). According, the Court will grant the Government's Motion (Doc. No. 15) and will enter judgment and an order of forfeiture in its favor.

## IV. CONCLUSION

For the foregoing reasons, the Government's Motion to Substitute Counsel (Doc. No. 5) and the Government's Motion for Default Judgment and For Entry of Order of Forfeiture (Doc. No. 15) are **GRANTED**. Accordingly,

1. Assistant United States Attorney Stephanie N. Toussaint is substituted as counsel of record, and Assistant United States Attorney J. Matthew Blackburn is withdrawn as counsel of record;

2. A Judgment by Default is **ENTERED** as to Wang and Minter, as well as all other persons or entities with respect to any interest they may have in the Property;

3. The Property is forfeited to the Government, and all right, title and interest in and to the Property is vested in the Government, pursuant to 21 U.S.C. § 881(a)(6);

4. The United States Marshals Service, as custodian of the Property, shall take custody of the Property and dispose of the same according to law; and

5. The Clerk shall provide the United States Attorney's Office and the United States Marshals Service with a certified copy of this order.

This is a final order. The Clerk is directed to enter judgment under Federal Rule of Civil Procedure 58 and close the file.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE